J. S08028/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEANNIE L. BLOUGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DARIN L. MATKOSKEY, | : | No. 1030 WDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered June 20, 2016,
in the Court of Common Pleas of Somerset County
Domestic Relations Division at No. DRS 0008415/PACSES
No. 495115247

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND SOLANO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 30, 2017**

Darin L. Matkoskey, ***pro se***, appeals the order of the Court of Common Pleas of Somerset County that ordered him to pay a child support obligation of $700 per month consisting of $630 per month for current support and $70 for arrearages with the arrearages totaling $2,855.69.

The facts and procedural history as recounted by the trial court are as follows:

> Jeannie L. Blough ["appellee"], and [appellant] are the parents of IAB (D.O.B. Mar. 2, 2015).  On April 16, 2015, [appellee] filed a Complaint for Support against [appellant].  The parties consented on May 7, 2015 to a paternity test.  The parties agreed that "if the test results indicate a probability of paternity 99% or higher, [appellant] shall be stipulated to be the biological father of the minor child. . . ." Stipulation, May 7, 2015.  According to the paternity test dated June 23, 2015, the

probability that Defendant is IAB's father is 99.9999999996%.

On July 22, 2015, child support was fixed at $983.00 per month. [Appellant] filed a petition seeking termination of his support obligation on August 5, 2015 wherein he complained almost exclusively of custody matters. [Appellant] also filed a *pro se* "Petition to Strike Judgment" on September 4, 2015 alleging, essentially, that the parties had placed no facts on the record, and that he had already "establish[ed] that material facts to which there is substantial controversy are at issue in this case." [Appellee] filed a response wherein she indicated that [appellant] had failed to aver a change in circumstances, and, therefore, his petition should be denied. [Appellant] then filed an "Objection to Response to Petition to Strike Judgment Under Rule 2967," in which he, **inter alia**, accused Domestic Relations, [appellee], and [appellee's] counsel, of "fraud and extortion." He claimed that the only way he could be liable for his child was by contract; he challenged subject matter jurisdiction, etc. On October 5, 2015, [appellant] filed a "Notice to Court," in which he stated, "I am an idiot in the language of the legal society, I do not understand the customs of the legal society, nor do I believe any law exists which requires man to know or understand these things." He then posed several questions such as whether he was required to know the law or hire an attorney; whether there was a "charging instrument or . . . contract that makes I [sic] a man liable for this debt"; and "Who wrote this code [i.e., the Support Law?] and is here today to testify to the intent?"

We held a hearing on [appellant's] petition(s) on October 6, 2015, and we denied them for the reasons contained in our findings, which we read into the record. On October 9, 2015, the Director of Domestic Relations sent a letter to the Court indicating that [appellant's] earnings had been mistakenly calculated in the original support order, insofar as Domestic Relations used twenty-five (25)

pay periods instead of twenty-nine (29); a modified order was provided for Court approval and it was in fact approved.

On October 19, 2015, [appellant] filed a document titled "Appeal." Upon review of this document, we concluded [appellant] had failed to state any sort of actionable claim, and we therefore dismissed [appellant's] so-called appeal.

[Appellant] filed with Domestic Relations a Petition for Modification on October 23, 2015, seeking termination of his support obligation, and striking out "Defendant" and "petitioner" and hand-writing "Man" in their stead. The basis of his petition was, "Not able to pay, not member of legal society. Causing me harm. Require return of property. Wish to return to status of man prior to contact with your agency. No government assistance is needed. Wish for court of record and jury." It appears that this was submitted to the Court on April 21, 2016. A scheduling praecipe was filed by Domestic Relations on May 10, 2016. Having heard argument from the parties on June 9, 2016 as to [appellant's] petition, we directed Domestic Relations to modify the support order *if* warranted by the change of custody we had ordered in a nonjury custody trial that had immediately preceded this support hearing. We rejected the rest of [appellant's] arguments for modification/termination of support.

A new support order was entered on June 20, 2016 obligating [appellant] to pay $630 per month in support and $70 per month in arrears, with arrears totaling $2,855.69. [Appellant] filed his Notice of Appeal on July 12, 2016, and on that same date he also filed a Petition to Proceed In Forma Pauperis. We granted [appellant's] IFP petition and ordered him to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 3 -

Trial court opinion, 8/24/16 at 1-3 (emphasis in original; citations to record omitted).

Appellant raises the following issues for this court's review:

1. Did the lower courts [sic] make an error of discretion by failing to follow any portion of Rule 1910 et al[.]?

2. Did [appellant] receive any disbursement of Title IV-A funds which would allow recovery by Domestic Relations Section, a Title IV-D agency?

3. Was "Color of Law" applied in this case by either Domestic Relations Section or the Lower courts [sic]?

4. Did the lower courts [sic] make a decision based on the beliefs of the courts [sic] creating an appearance of forced religion?

5. Where [sic] any orders placed by the lower courts [sic] that would give the appearance of a conflict of interest?

6. Does the taking of mans [sic] property without his consent by way of threats amount to extortion as defined by Blacks Law 4th edition?

7. Have any elements of Involuntary Servitude as defined by 18 Pa.C.S.[A.] § 3012 et al[.], and restricted by both the U.S. Constitution and The Constitution of the Commonwealth of Pennsylvania been used in this case?

8. Is the creation of a commercial debt obligation without consent, equal exchange of value and consideration, and created under threat and duress, considered a forced contract even after [a]ppellant expressly notified Domestic Relations Section in writing that All Rights were

reserved, and no waiver was given pursuant to UCC 1-308?

9. Does the taking of property without trial and opportunity to defend constitute a due process violation, in accordance with The U.S. Constitution and Constitution of the Commonwealth of Pennsylvania?

10. Does Domestic Relations Sections' failure to transfer all relevant evidence presented prior to hearing in an effort to gain financially rise to a level of Fraud?

11. Does [appellee's] failure to disclose all income, as defined in Pa.R.C.P. 1910.16-2, rise to a level of fraud, when done in open court?

12. Did the courts [sic] fail to recognize the rights of the [a]ppellant and trespass against his constitutionally protected rights?

Appellant's brief at 1-2.

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Rich v. Rich*, 967 A.2d 400, 405 (Pa.Super. 2009) (citations omitted).

Initially, appellant contends that his duty to provide support for his child depends on the custody situation and that because appellee at one point apparently declined to allow appellant to have contact with the child, appellant did not have a duty to support the child. Appellant fails to cite any pertinent authority for his position. Appellant waives this issue for lack of development in the argument section of his brief. Pa.R.A.P. 2119(a) (an appellate brief must contain "discussion and citation of authorities" to each issue raised); *see also Butler v. Illes*, 747 A.2d 943, 944 (Pa.Super. 2000) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, [this] court will not consider the merits thereof." (citations omitted)).

Appellant next contends that he did not receive any disbursement of Title IV-A funds which would allow recovery by the Domestic Relations Section of the trial court which he calls a Title IV-D agency. Title IV refers to Title IV of the Social Security Act, 42 U.S.C.A. §§ 601-687. Appellant argues that because he, appellee, and their child are not receiving public assistance under Title IV-A that the Domestic Relations Section has no compelling interest in facilitating child support orders because no public funding has been provided to any party involved.

However, regardless of whether a person is receiving public assistance under the Social Security Act, Section 4321(2) of the Domestic Relations Code, 23 Pa.C.S.A. § 4321(2), provides that "Parents are liable for the

support of their children who are unemancipated and 18 years of age or younger." Here, I.A.B. is younger than two years old, so appellant is definitely liable for the child's support.

Appellant next contends that "Color of Law" was not applied in this case by either the Domestic Relations Section or the trial court. He argues that it is unconstitutional for him to have to pay for the support of his child through an agency, government, or private corporation. Once again, the General Assembly of the Commonwealth of Pennsylvania has established that a parent has an obligation to support his or her child. Appellant's contention has no merit.

Appellant next contends that the trial court's decision created an appearance of "forced religion." Appellant's brief at 23-25. Appellant makes this argument because he believes that the trial court's decision reflected a belief in a duty to obey the legislator which "would imply that the legislature was somehow the creator of [appellant]. . . . [Appellant] is the creation of God." (Appellant's brief at 23.) Appellant further argues that God is the creator of man and man is the creator of government. He argues that he must follow the teachings of the Holy Bible rather than legislative enactments which interfere with those teachings. The trial court termed this argument "frivolous." This court agrees.

Appellant next contends that the trial court's orders gave the appearance of a conflict of interest because appellee was a long-time

employee of the trial court. However, the trial court stated in its opinion that the Somerset County Court Administrator requested that the Supreme Court of Pennsylvania assign a judge from outside the county to preside over this matter. Our supreme court did so. The trial court determined that there was not even the appearance of impropriety. This court agrees. Similarly, this court finds no merit in appellant's claims that the Domestic Relations Section has a financial interest in obtaining fees and that because appellee's attorney is also an assistant district attorney for Somerset County there is a conflict.

Appellant next contends that the taking of his property through threats amounts to extortion because he was:

> threatened by communication both verbally and in written form to supply information and property to Domestic Relations Section. Domestic Relations Section demanded the earnings of [appellant] and took said earnings via an income withholding attachment against [appellant's] will under threat. The specific threat was jail, fines or both as well as charges of contempt which is considered a crime.

Appellant's brief at 28. What appellant terms "extortion," appears to be the Domestic Relations Section doing its job to establish the extent of appellant's support obligation. Again, this contention has no merit.

Similarly, appellant's contention that the Domestic Relations Section used extortion tactics to create a condition of involuntary servitude has no merit.

Next, appellant contends that the trial court's creation of a support obligation without his consent and imposed under threat and duress constituted a forced contract. Appellant attempts to argue that the Domestic Relations Section was acting as a "private citizen" and not as the government when it imposed the support obligation. Appellant's brief at 31. Appellant is incorrect. The Domestic Relations Section was not entering into a private contract as the government would when it hired someone to paint a government-owned bridge. Under Rule 1920.31 of the Somerset County Rules of Civil Procedure, Som. R.C.P. 1920.31, all claims for child support are processed through the Domestic Relations Section. The Domestic Relations Section was acting to make appellant comply with the law to provide support for one's children.

Appellant next contends that because employees of the Domestic Relations Section are not required to swear to an oath of office as judges are, any order such an employee recommends would be equivalent to a private citizen creating an order. Appellant asserts that if the trier-of-fact does not properly present or collect a complete representation of the relevant facts, it is left to the injured party to find all of the issues and present them for defense. Appellant terms this a complete breakdown of the federal and Pennsylvania right to due process.

It is unclear exactly what appellant is arguing. The trial court did enter the order which he appeals. Due process calls for such procedural

safeguards that are necessary depending on the circumstances of a particular case. As this court stated in *In re F.C., III*, 966 A.2d 1131 (Pa.Super. 2009), "due process is a flexible concept incapable of exact definition and is concerned with the procedural safeguards demanded by each particular situation in light of the legitimate goals of the applicable law." *Id.* at 1138. Appellant presented his petition and had the opportunity to present witnesses and argument. This court discerns no due process violation.

Appellant next contends that the Domestic Relations Section's failure to transfer all relevant evidence presented prior to hearing in an effort to gain financially constitutes fraud. Appellant bases his contention on his belief that the Domestic Relations Section acted in order to enrich its own coffers rather than to enforce the statutory obligation of a parent to support his or her child. "The duty to support one's child is absolute. . . ." *Saunders v. Saunders*, 908 A.2d 356, 359 (Pa.Super. 2006).

Appellant next argues that appellee committed fraud when she failed to disclose all of her income. Appellant argued at the hearing that appellee failed to include a $6,000 payout that she received as a pension and AFLAC insurance payments that she received as a result of maternity leave. (Notes of testimony, 10/6/16 at 10.) Appellee's attorney reported that the pension payment was actually property appellee inherited and the AFLAC payments were made some time ago. Appellee's attorney stated that the income was

correct. (*Id.* at 17.) Based on a review of the record, there was a disagreement between the parties as to what constituted appellee's income. Appellant claims that appellee committed fraud, but this bald assertion is unsupported by the record.

Finally, appellant argues that the trial court failed to recognize his rights and trespassed against his constitutionally protected rights. He basically asserts that the trial court, in ordering him to pay support for his minor child, caused harm to him and that his family is private and not public so that the government has no right to impose a support obligation. The trial court termed this argument "frivolous." This court agrees.

Appellant has failed to establish that the trial court abused its discretion in issuing the support order.

Order affirmed.


Solano, J. joins this Memorandum.

Gantman, P.J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2017