J-A17011-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ESTATE OF D.K. PHILLIPS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ALBERTA JONES, MARY ANN SHAVER AND ROSE MARIE ROWAN | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1172 WDA 2017 |

Appeal from the Order Dated July 7, 2017
In the Court of Common Pleas of Greene County
Orphans' Court at No(s):  Case No. 2015 F/F 3,
O.C. No. 9626 Term, 1925

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    FILED NOVEMBER 27, 2018

Alberta Jones, Mary Ann Shaver and Rose Marie Rowan ("Appellants" or "Jones Heirs"), heirs of D.K. Phillips ("Decedent"), appeal the order dated July 7, 2017, and entered July 14, 2017, that confirmed absolutely the account in the Estate of D.K. Phillips, Deceased ("Estate"), dismissed all objections to the account, and ordered the distribution of estate assets to the heirs described on Schedule A, in the amount of $1,324,640.00.[1]  Appellants frame one issue for our review:  "Did the [t]rial [c]ourt abuse its discretion in dismissing

_____

[1] The orphans' court also ordered that "cash in the amount of $980,000.00 shall be suspended and retained by the Administrator d.b.n.c.t.a. until further Order of Court or Supplemental Decree of Distribution is entered."  Order, 7/14/2017.

Appellants' Objections without affording Appellants a meaningful opportunity to present evidence and take testimony in support of said objections[.]" Appellants' Brief at 4. Based upon the following, we affirm.

Decedent died in 1925 and the Estate has remained opened since that time.[2] Decedent's two sons administered the estate until the second one died in 1965, when First National Bank of Waynesburg was appointed administrator d.b.n.c.t.a. In the Petition for Granting Letters of Administration d.b.n.c.t.a., filed in 1965 by John M. Phillips on behalf of the Phillips family, the petitioner stated his opinion that the entire Estate administration had been completed except for ongoing duties pertaining to oil and gas interests. Since then, the Estate has been administered by a succession of banks, with the current administrator being PNC Bank, N.A. (PNC). At the time of the hearings, there were 77 heirs with fractional interests, none of which have a majority interest.[3] With the passage of time, the number of heirs changes.

_____

[2] Decedent's Will provided at Paragraph 4:

> (Fourth) I hereby make, constitute and appoint my sons William Bently Phillips and Thomas Garfield Phillips my Executors with power to lease and release all lands for oil and gas purposes which may be in my possession at the time of my death and collect all oil and gas royalties and rentals of whatsoever kind that may accrue on said lands and make an equal distribution of same semiannually. Said Executors to receive a commission not to exceed three per cent for any and all monies paid over by them and not be required to give bond for the performance of their duty.

[3] Appellants each have a one two-hundredths interest.

Litigation began on April 2, 2015, when PNC filed a First and Final Account and Petition for Adjudication/Statement of Proposed Distribution ("Account"). In response thereto, EQT Production Company (EQT) filed a Petition objecting to PNC's request for court approval of a proposed oil and gas lease with Vantage Energy Appalachia II LLC (Vantage) on May 4, 2015.

On August 10, 2015, three heirs of the Estate, Nancy Good, Mark Stephen McDonnell, and Samuel G. Lantz ("Good Heirs") filed a Petition Objecting to Personal Representative, PNC Bank's Request For Court Approval of a Proposed Oil and Gas Lease With Vantage, and also objected to attorney fees paid by PNC and fiduciary fees taken by PNC.

On August 17, 2015, the orphans' court entered an order scheduling a hearing for November 19, 2015 on all pleadings filed of record to date. Counsel for PNC was ordered to provide notice to all interested parties, and did so on September 9, 2015. Meanwhile, on August 24, 2015, David Hook, Esquire, entered his appearance for Appellants, the Jones Heirs, but did not file any objections to the Account nor join the Good Heirs' Petition.

On November 19, 2015, the day of the first hearing, James Ivan Phillips, an heir, filed Objections to the First and Final Account of PNC, challenging the attorney fees incurred by the Estate and the fiduciary fees taken by PNC, and PNC's failure to close the Estate in a timely fashion and avoid tax repercussions. On January 12, 2016, another heir, Catherine Koester, filed pro se Objections to the First and Final Account of PNC, objecting to PNC's

failure to file a current inventory and PNC's failure to make timely distributions to heirs resulting in unfavorable tax repercussions to the Estate.

The orphans' court conducted nine evidentiary hearings between November 19, 2015 and October 27, 2016, initially, for the purpose of determining whether PNC should enter into an oil and gas lease with Vantage.[4] At the fifth evidentiary hearing, held on March 15, 2016, the orphans' court judge notified the parties he had been granted authority by the President Judge to resolve the objections to the account related to the administration of the Estate by PNC. See N.T., 3/17/2016, at 36.

During the hearings from November 19, 2015, to August 11, 2016, Appellants were present and participated through their counsel in cross examining witnesses, presenting documentary evidence, and making argument. At that time, Appellants had not yet filed objections.

On June 13, 2016, the orphans' court entered an order scheduling oral argument on objections filed by any party to the First and Final Account for August 31, 2016. The order further directed that any party desiring an evidentiary hearing on the objections must file a motion with the court. On August 5, 2016, PNC filed a motion requesting an evidentiary hearing on the

_____

[4] On June 4, 2015, the presiding judge, President Judge Farley Toothman, recused himself from the case. Thereafter, Judge Gerald Solomon of the Court of Common Pleas of Fayette County, was assigned to this case as a visiting judge.

objections to the First and Final Account, specifically, on the issues of attorney fees paid by PNC and fiduciary fees paid to PNC. PNC's motion was granted on August 11, 2016. No other party, including Appellants, requested an evidentiary hearing.

On August 26, 2016, Appellants filed objections to the Account.[5] Therein, Appellants sought surcharges against PNC, asserting PNC "breached its fiduciary duty" and "acted in a grossly negligent manner" in its administration of the Estate. Objections to Account, 8/26/2016, ¶¶1-2. Specifically, Appellants alleged:

> PNC failed to properly distribute income, and PNC caused the Estate to incur unnecessary tax liability. See ¶¶ 3-4, 18, 25-26, 28-30.

> PNC failed to promptly complete administration of the Estate after the 1965 grant of letters of administration. See ¶¶5-11.

> PNC filed an incomplete Account. See ¶¶12-17, 19-21, and 27.

> PNC paid unexplained fees for legal services and other services. See ¶22-24.

_____

[5] Appellants' objections were filed more than 16 months after PNC filed its Account, over 11 months after the September 9, 2015, notice of the November 19, 2015 hearing was sent to all heirs, and after seven evidentiary hearings had already taken place. Even though the August 17, 2015 Order does not specifically state the November 19, 2015 hearing was an audit or a hearing on the objections filed to date by the Good Heirs and EQT, by its terms, the Order was notice to all heirs of "the place of the hearing and the right to be heard and further directed that the judge be provided with any pleading, motion, petition or request filed of record." Order, 8/17/2015. Thus, an argument could be made that Appellants' objections were untimely filed, but PNC has not raised this issue.

PNC received unreasonable administration fees. See ¶¶31 (1988-1998) and 32 (1982-2014).

PNC did not have authority to negotiate or lease oil and gas interests. See ¶¶33-36.

Appellants requested the PNC Account be rejected and a Master appointed to compute the appropriate surcharge.

Subsequent to the filing of Appellants' objections, the orphans' court conducted the August 31, 2016, oral argument and evidentiary hearing on the issues of the legal fees paid by PNC and fiduciary fees taken by PNC for the administration of the Estate. Another evidentiary hearing was held on October 27, 2016. At that hearing, the orphans' court judge asked whether Appellants' counsel had any other witnesses, and Appellants' counsel answered that he had no other witnesses. See N.T., 10/27/2016, at 3.

On October 28, 2016, the orphans' court entered an order cancelling the hearings scheduled for November 22, 2016 and November 29, 2016. Order, 10/28/2016. No party objected to the order or requested a further evidentiary hearing.

On November 14, 2016, PNC filed a supplement to the First and Final Account and a proposed decree, schedule of personalty, and schedule of realty.[6] On December 22, 2016, the Good Heirs filed objections to PNC's

_____

[6] On December 5, 2016, a Petition to Intervene and Objection to Account and Proposed Distribution was filed by Farley Toothman, pro se, alleging he is the

supplemental account.  On July 11, 2017, nearly eight months after PNC filed the supplemental account and proposed decree, Appellants filed Objection [sic] to Proposed Decree of Distribution, and a Brief in Support of Objection to Proposed Decree of Distribution.[7]  Thereafter, on July 14, 2017, the orphans' court entered the order under appeal.[8]

With that history, we turn to address the single question presented to this Court:

> Did the [t]rial [c]ourt abuse its discretion in dismissing Appellants' Objections [to the Account] without affording Appellants a meaningful opportunity to present evidence and take testimony in support of said objections?

_____

true owner of oil and gas rights on 96 acres of property that PNC claimed to be an asset of the Estate.  PNC and the Jones Heirs filed responses in opposition to the petition to intervene.  A hearing on the petition to intervene was held on February 3, 2017.  The orphans' court granted the Petition on July 12, 2017.  However, evidentiary hearings on this issue remain pending in the orphans' court due to this appeal. See Order, 9/25/2017.  See also Trial Court Opinion, 1/11/2018, at 2 n.1.

[7] Appellants' objections to a PROPOSED decree of distribution is not a pleading anticipated by the Orphans' Court Rules. Pursuant to the Pennsylvania Orphans' Court Rules, effective September 1, 2016, the former practice of filing exceptions to a Decree was discontinued and a Decree or Order confirming an account  can be directly appealed pursuant to Pennsylvania Rule of Appellate Procedure 342(a).

[8] No other heirs have filed an appeal.

Appellants' Brief at 4 ("Statement of Question Presented").[9]   Here, Appellants

divide their discussion into three separate arguments:

> [(1)]  Appellants' Due Process Right To A Meaningful Opportunity To Present Evidence On Their Surcharge Claims Was Violated[,]
>
> [(2)]  The Hearing Testimony Cited In The Trial Court's Opinion Was Limited Solely To The Lease Issue[, and]
>
> [(3)]  PNC Is Liable To The Heirs For The Maladministration Of Its Predecessors-in-interest[.]

Id. at 16, 19, and 27.[10]  We address these arguments together.

> The principles that guide our review are well settled:
>
> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the [o]rphans' [c]ourt's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

In re Estate of Bechtel, 92 A.3d 833, 837 (Pa. Super. 2014).

_____

[9] On August 15, 2017, the orphans' court ordered Appellants to file a Pa.R.A.P. 1925(b) statement.  Appellants complied by filing a concise statement on August 30, 2017, raising 20 errors complained of on appeal.

[10] We remind counsel Pa.R.A.P. 2119(a) mandates "The argument section shall be divided into as many parts as there are questions to be argued …".

The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976). "[C]onsiderations of due process involve common-sense reasoning and fundamental fairness. Moreover, due process is a flexible concept incapable of exact definition, and is concerned with the procedural safeguards demanded by each particular situation in light of the legitimate goals of the applicable law." In the Interest of F.C., III, 966 A.2d 1131 (Pa. Super. 2009). In addition, "a violation of procedural due process requires a showing of prejudice before relief is granted." Stepanovich v. McGraw, 78 A.3d 1147, 1151 (Pa. Super. 2013).

Appellants contend their due process rights were violated when the orphans' court dismissed their objections without affording Appellants an opportunity to present evidence, call witnesses, or take testimony "as to the substantial issues raised in the Objections, which concern over fifty years of maladministration by PNC and its predecessors-in-interest." Appellants' Brief at 17.

Appellants contend the hearings held by the orphans' court judge were strictly limited to the issue of whether PNC had the authority to enter into an oil and gas lease with Vantage and whether that lease was in the heirs' best interest. Appellants argue the judge made clear that he considered the surcharge issue to be a separate issue that would be dealt with at a future time, yet he dismissed all objections before that time ever came. Appellants

assert they reasonably relied on the orphans' court judge's repeated assurances that the surcharge issue would be dealt with in future proceedings and the July 14, 2017 order "unfairly pulled the rug out from under them." Appellants' Brief at 18.

The orphans' court rejected Appellants' claims of error, as follows:

> Error #1: The Court erred in dismissing the August 25, 2016, Objections without allowing a full and fair opportunity to present evidence related thereto.
>
> The crux of the August 25, 2016, Objection is that PNC's Account should be rejected because PNC, as Administrator, failed to (1) act in the best interest of the Beneficiaries; (2) acted in a grossly negligent manner in its administration of the estate, and (3) failed to properly distribute income incurring higher taxes. A review of the record illustrates that in the nine (9) evidentiary hearings the Court devoted to this matter, the Court heard sufficient testimony on the issues complained of in the August 25, 2016, Objections.
>
> In particular, the following testimony, together with other testimony, supports the Court's contention that it did not err as to this issue. Carolyn Whitworth, an attorney with Tucker Arensberg, a law firm retained by PNC for the purpose of preparing an account and petition for adjudication, was sufficiently cross-examined by the Jones Heirs on the controversy of only one account being filed in the time frame of 1965 to 2015. N.T. 11/19/2015, at 21-23. Whitworth further testified regarding PNC's understanding as to its responsibilities in paying taxes, collecting royalties, and making distributions pursuant to the 1965 Agreement between the then Administrator and the heirs of the estate. N.T. 11/19/2015, at 34-36.
>
> Donald Gavett, Vice-President and Trust Advisor at PNC, testified regarding the various duties and services rendered by PNC on the behalf of the heirs. Some of these duties and services included lease negotiation, collection and distribution of royalties, and identification of all estate heirs. N.T. 11/19/2015, at 39-44. Further, Gavett was extensively cross-examined by the Jones Heirs on whether PNC weighed all risks and factors in its decision to forego distribution and instead enter into another lease. N.T.

11/19/2015, at 98-104. He was also extensively cross-examined by the Jones Heirs on PNC's fiduciary obligations concerning the oil and gas interests held by the estate. N.T. 11/19/2015, 107-110.

It is also important to note that the Court allowed the Jones Heirs to argue their Objections. N.T. 8/31/2016, at 89-117.

This testimony, as well as the opportunity afforded the Jones Heirs to argue their objections, clearly established that the Jones Heirs were provided a full and fair opportunity to present evidence related to this alleged error and enabled this Court to render its final ruling on the merits in the July 7, 2017, Court Order. Thus, this alleged error is without merit and should be denied.

> Error #2: The Court erred in dismissing the Objections in their entirety while limiting testimony to the issues whether PNC had the authority to enter a lease with Vantage and whether the lease was in the heirs' best interest.

While, at the outset of this matter, the Court did state on the record that the Court's inquiry would be limited to those sole issues, it was a statement made within the confines of the Court's authority at that specific time. However, the Court's authority to settle the entire estate was later granted by the President Judge and was communicated to all parties involved in this litigation.

Moreover, the following testimony, not exclusive, supports the Court's contention that testimony was not limited to those sole issues. Carolyn Whitworth, testified concerning accounting issues. Moreover, she was cross-examined by the Jones Heirs on the controversy of only one account being filed in the period from 1965 to 2015. N.T. 11/19/2015, at 11-24. Also, Donald Gavett was extensively cross-examined by the Jones Heirs on PNC's fiduciary obligations concerning the oil and gas interests held by the estate. N.T. 11/19/2015, at 107-110.

Additionally, an heir, James Ivan Phillips, was cross-examined by the Jones Heirs on the estate's accounting, assets, inventory, and preference concerning the lease options before the Court, N.T. 11/19/2015, at 205-207, while Mark Munson, Market Trust Director at PNC, was cross-examined by the Jones Heirs on the issues of fiduciary duty, possible estate property located in West

- 11 -

Virginia, authority to enter into leases, estate administration, and whether PNC acted in the heir[s'] best interest. N.T. 12/23/2015, at 209-230.

Thus, the record clearly establishes that the Court did not limit the testimony to the sole issues of whether PNC had the authority to enter into a lease with Vantage and whether the lease was in the heirs' best interest. Further, each of the above witnesses were subjected to cross-examination by the Jones Heirs, among others, as to the administration of this estate. Thus, this alleged error is without merit and should be denied.

* * * *

Error #5: The Court erred in dismissing the Objections requesting a surcharge be imposed on PNC without allowing the presentation of evidence on PNC's alleged breaches of fiduciary duty.

In this contention, the Jones Heirs state that the Court erred in dismissing the Objections without allowing presentation of evidence on PNC's alleged breaches of fiduciary duty and in not imposing a surcharge on PNC. The imposition of a surcharge is within the discretion of the Court and the testimony of record does not provide a sufficient basis for the Court to impose a surcharge.

While the estate was opened in 1925, PNC did not become the current Administrator until 2009. Given the complexities of the estate, and the testimony submitted, it would be inequitable to hold PNC liable for any deficiencies of past Administrators. Moreover, the record does not support the contention that the Court prohibited the presentation of evidence on PNC's alleged breaches of fiduciary duty. Every witness called was subjected to cross-examination by the Jones Heirs, among others, as to the administration of this estate, where appropriate.

Testimony was offered which clearly demonstrates that there is sufficient evidence of record concerning this issue and to demonstrate that it is without merit. Carolyn Whitworth, was sufficiently cross-examined by the Jones Heirs concerning PNC's alleged breach of fiduciary duty by reason of the failure of prior Administrators in not filing an inventory and account prior to 2009. N.T. 11/19/2015, at 11-24. Also, an heir, James Ivan Phillips, was cross-examined by the Jones Heirs concerning his opinion on the

PNC's alleged breach of fiduciary duty; N.T. 11/19/2015, at 206. Further, the direct and cross-examination of Thomas Butz, an attorney hired by PNC to review leases and amendments, illustrates PNC's extent and understanding of the fiduciary duty owed to the heirs. N.T. 12/21/2015, at 5-186. Lastly, as previously discussed, the testimony of Mark Munson, illustrates the extent and understanding of PNC as to the fiduciary duty owed to the heirs. N. T. 12/23/2015, at 136-137, 177, and 209-230.

As such, this non-exclusive testimony clearly shows that sufficient evidence was presented into the record to dispute the argument that the Court failed to allow testimony on PNC's alleged breach of fiduciary duty. We would also note that these witnesses were subjected to cross-examination by the Jones Heirs, among others, as to the administration of this estate.

Orphans' Court Opinion, 1/11/2018, at 2-7 (footnotes omitted).

Having reviewed the record, we discern no basis upon which to disturb the decision of the orphans' court judge.

Appellants' argument that the orphans' court limited the hearings to the lease issue ignores the testimony elicited by Appellants regarding PNC's administration of the Estate. Significantly, Appellants were represented by counsel, were present, and participated throughout the orphans' court proceedings, by cross-examination, presentation of documentary evidence, and legal argument. Evidence relating to PNC's administration of the Estate was presented through Appellants' exhibits and cross-examination of PNC's witnesses: Donald Gavett, Vice President and Fiduciary Advisor for PNC; Carolyn Whitworth, Esquire, of Tucker Arensberg, P.C., fiduciary counsel for PNC as administrator d.b.n.c.t.a. of the Estate; Mark Munson, Market Fiduciary Director for PNC, and Thomas Butz, oil and gas counsel for PNC as

administrator d.b.n.c.t.a. of the Estate. In addition, Appellant Alberta Jones and her husband, Ralph Jones, testified on direct examination and voiced complaints against PNC.[11] Furthermore, as will be discussed below, Appellants had the opportunity to call other witnesses, but did not do so.

Appellants concede that at the August 31, 2016, hearing, the orphans' court allowed argument regarding their objections to legal fees paid by PNC and fiduciary fees taken by PNC, but argue that the orphans' court judge limited argument to the post-2009 administration issues. Appellants point to the orphans' court judge's statement, "I am going to limit questions in this hearing to what PNC has done with this estate since PNC acquired it sometime in 2009." Appellants' Brief at 26, citing N.T., 8/31/2016, at 31. Appellants assert they were "not given the opportunity to fully argue their Objections, particularly as to the nearly fifty years of maladministration prior to 2009" and "never permitted to call witnesses, take testimony, or present evidence on their Objections." Appellants' Brief at 27 (emphasis in original).

_____

[11] See e.g., N.T., 3/17/2016, at 52 (Ralph Jones: "The only assets, the inventory I had was a copy of the 1925 inventory that I acquired myself out of this courthouse."), id. at 66 ("I would have liked to [have] seen [the Estate] settled three or four years ago, you know, it's wasted a lot of money. I believe last year alone, 180 some thousand went out of the estate's money to lawyers that's fighting the heirs."), id. at 67 ("Most of the heirs feel PNC is going to drain all the money and they are never going to see any of it."); N.T., 8/11/2016, at 178 (Alberta Jones: "[W]e have paid PNC over $200,000 in Court costs, attorney fees, and I think it's time to let the heirs decide what they want to do. ... [W]e have been charged because PNC has been negligent in settling this case. Many of us have been charged a higher tax rate, and I think that is very unfair to the heirs.").

We are unpersuaded by Appellants' argument, which quotes the ruling of the orphans' court judge out of context. At the August 31, 2016, hearing, Appellants' counsel cross-examined Donald Gavett, Vice President and Fiduciary Advisor for PNC:

> And you would agree, Mr. Gavett, if the bank had distributed this estate and closed it out in 1965 or '66 or '67, there would be no need for PNC asking for administration fees today; would there?

N.T., 8/31/2016, at 29. Counsel for PNC then objected, stating, "I think he is referring to … I believe the First National Bank of Waynesburg" and further objected on the grounds that "I don't know how PNC could be held accountable for or asked questions about what [First National Bank of Waynesburg] did 51 years ago." Id.

> The orphans' court then addressed Appellant's counsel:
>
> I said earlier in this proceeding that I don't see how we could hold PNC responsible for what's been done with regard to the estate, and the objections you raised that I read this morning, and I read through them the past hour before we began the proceeding, you seem to want to hold PNC responsible for anything that's happened in the estate since 1925, and I don't know how you can maintain that position.
>
> If you had some legal authority to provide me I would be glad to receive it. But it appears to me the issues should be when PNC became the administrator of this estate and what it's done since then. I don't see how they can be held accountable for what was done by First National [Bank] of Waynesburg, First National of Washington, Integra, who else had their hands in this.
>
> [APPELLANTS' COUNSEL]: I think, Your Honor, when you merge two businesses, the successor business gets also liabilities and claims that are existent. They don't go away, and that's what they are suggesting that their liabilities and claims for the improper administration of this estate goes away.

- 15 -

> THE COURT: Absent some evidence ... of what the bank assumed when it acquired National City, I am going to limit the questions in this hearing to what PNC has done with this estate since PNC acquired it sometime in 2009.
>
> [APPELLANTS' COUNSEL]: I have no further questions. Thank you.

Id. at 30-31 (emphasis added).

Appellants argue to this Court that "[i]t is well settled that the surviving corporation in a merger succeeds to all assets, liabilities and rights of action held by the merged corporation."[12]  Appellants contend "the Estate has had the same Administrator since 1965, even if that Administrator's name changed a few times," and maintain "PNC assumed all of the predecessor banks' liabilities to the heirs."  Appellants' Brief at 29-30.

We recognize that a successor corporation may assume the liabilities of the predecessor corporation.[13]  However, Appellants presented no evidence

---

[12] Appellants' Brief at 28 (citations omitted).

[13] "[W]hen one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." Johnson v. Am. Std., 8 A.3d 318, 322 n.1 (Pa. 2010). "This general rule of non-liability can be overcome, however, if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to escape liability, or (5) the transfer was without adequate consideration and no provisions  were made for creditors of the selling corporation." Id. (emphasis added).

as to PNC's acquisition of National City. Mr. Gavett testified he had worked on the Estate while he was employed by several banks that preceded PNC, namely, First National Bank of Washington,[14] Integra Bank, and National City Bank. However, Mr. Gavett's testimony that PNC Bank assumed responsibility for the Estate in 2009 "when the merger of National City and PNC was completed,"[15] cannot be regarded as evidence of merger since Mr. Gavett was a trust officer called to testify regarding his knowledge of the administration of the Estate, and there was no showing that he was qualified to testify regarding the terms of PNC's acquisition of National City, nor National City's acquisition of its predecessor. Moreover, the orphans' court judge's ruling, that "[a]bsent some evidence … of what the bank assumed when it acquired National City, I am going to limit the questions in this hearing to what PNC has done with this estate since PNC acquired it in 2009," clearly advised Appellants there was no evidence that showed PNC assumed its predecessors' liabilities. Therefore, while Appellants argue that the orphans' court judge led them to believe the surcharge issue would be addressed at a future time, the transcript belies their position. Appellants were on notice at the August 31, 2016 hearing that their objections as to the administration of the Estate prior to 2009 were barred for lack of evidence that PNC assumed

---

[14] National Bank of Washington succeeded the first corporate fiduciary, First National Bank of Waynesburg.

[15] N.T., 11/19/2015, at 40.

the liabilities of National City or any other predecessor bank when PNC acquired it. Appellants never presented such evidence.

Following the August 31, 2016 hearing, the court convened on October 27, 2016 for a continuation of the August 11, 2016 evidentiary hearing. At the outset, the orphans' court addressed Appellants' counsel, noting that when the August 11, 2016 evidentiary hearing concluded Appellants' counsel had had his witness, Alberta Jones, on the stand. The orphans' court judge asked if Ms. Jones had completed her testimony and Appellants' counsel indicated that she had. The orphans' court judge then questioned Appellants' counsel as to whether he had any other witnesses, and Appellants' counsel indicated he had no other witnesses. See N.T., 10/27/2016, at 3. The October 27, 2016 hearing concluded without any party presenting evidence.

Thereafter, on October 28, 2016, the orphans' court issued an order that cancelled future hearings. Appellants did not object, and never requested the orphans' court to allow the record to remain open for evidence of PNC's liability for its predecessor banks' administration. Consequently, we believe the orphans' court correctly concluded:

> While the estate was opened in 1925, PNC did not become the current Administrator until 2009. Given the complexities of the estate, and the testimony submitted, it would be inequitable to hold PNC liable for any deficiencies of past Administrators.

Orphans' Court Opinion, 1/11/2018, at 6.[16]

As the record in this case demonstrates Appellants, through counsel, participated in all the evidentiary hearings held in this matter, and had the opportunity to present witnesses and evidence to show PNC's liability prior to 2009 (but failed to do so), Appellants' claim that the orphans' court dismissed their objections without affording them a meaningful opportunity to present evidence and take testimony in support of their surcharge objections fails to warrant relief.

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2018

_____

[16] Furthermore, the record is devoid of evidence that the living beneficiaries, as each successor bank assumed administration of the Estate, ever objected to fees or requested an accounting, although they had every right to do so.